IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CAMERON GREGORY,                    )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )   Case No. CIV-13-01031-M
                                    )
PARKER HANNIFIN CORPORATION,        )
also known as the WALTHER COMPANY,  )
MAXBAR INC.,                        )
H. LORIMER CORPORATION, and         )
CARL KURT WALTHER GmbH              )
& CO. KG,                           )
                                    )
         Defendants.                )

## ORDER

Before the Court is plaintiff's Partial Motion for Summary Judgment, filed September 2, 2014. On October 23, 2014, and October 29, 2014, defendants Parker Hannifin Corporation (hereinafter, "Parker"), Maxbar, Inc. (hereinafter, "Maxbar"), H. Lorimer Corporation (hereinafter, "Lorimer"), and Kurt Walther Gmbh & Co., KG (hereinafter, "Walther") each filed separate response briefs. On November 03, 2014, plaintiff filed his reply. In addition, on October 23, 2014, Lorimer filed its own Motion for Summary Judgment.[1] On November 07, 2014, plaintiff filed his response, and on November 14, 2014, Lorimer filed its reply. Based upon the parties' submissions, the Court makes its determination.

---

[1] Lorimer moves for summary judgment on the basis that plaintiff cannot identify Lorimer as the provider of the quick disconnect that he claims caused his injury, Lorimer never sold SpirStar valve repair kits to Kemper, and Kemper is a sophisticated, knowledgeable, and experienced user of high pressure component parts. Thus, Lorimer asserts that it did not owe plaintiff a duty to warn. Because Lorimer's assertions are substantially similar to the issues raised by plaintiff's partial motion for summary judgment and defendants' response briefs, the Court addresses Lorimer's Motion for Summary Judgment along with plaintiff's Motion for Partial Summary Judgment in this same Order.

I.      Introduction

Plaintiff's instant law suit arises out of an injury he suffered when using a high-pressure quick connect coupler during the scope of his employment. Walther manufactures high-pressure quick connect couplers, Parker-Hannifin Polyflex, a product used in hydraulic applications involving high fluid pressure. Maxbar obtains these quick connect couplers from Walther and sells them to Parker. In addition, Maxbar removes the internal components from some of these Walther manufactured quick connect couplers and repackages and sells them exclusively to Parker as quick disconnect coupler repair kits. In turn, Parker sells these quick couplers and repair kits to nonparty Aaxion Incorporated, who in turn sells the couplers to Lorimer. Lorimer then sells the items to plaintiff's employer Kemper and Valve Fitting Corporation ("Kemper").

Plaintiff was injured when testing a manifold trailer using a particular quick disconnect coupler. This particular Walther manufactured quick coupler was intermingled with a SpirStar internal component, a check valve. However, the Walther manufactured quick connect check valve and the SpirStar quick connect check valve were slightly different sizes and did not fit together as they should. As a result, when plaintiff used the Walther manufactured coupler that was intermingled with a SpirStar check valve, the gauge gave a false reading of zero pressure leading plaintiff to believe the trailer was depressurized. Thus, when plaintiff proceeded to disconnect the hose connected to the trailer from the pump, plaintiff suffered serious injuries when an explosive volume of air and water escaped. Plaintiff now brings this products liability claim against defendants Walther, Maxbar, Parker, and Lorimer.

II.     Standard of Review

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The

moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

Plaintiff seeks partial summary judgment on his products liability claim. To prevail on a products liability claim, a plaintiff must establish the following three elements: (1) that the product was the cause of the injury; (2) that the defect existed in the product at the time it left the manufacturer, retailer, or supplier's possession and control; and (3) that the defect made the product unreasonably dangerous to him or his property. *See Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). A product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Swift v. Serv. Chem., Inc.,* 310 P.3d 1227, 1331 (Okla. Civ. App. 2013).

In the case at bar, plaintiff asserts that defendants failed to provide an adequate warning. "A product may be defective due to defective design or manufacture, but a product may also be defective if a manufacturer fails to provide the user adequate warning of inherent dangers from all foreseeable uses of a product." *Torres v. Cintas Corp.*, 672 F. Supp. 2d 1197, 1215-16 (N.D. Okla. 2009) (citing *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020 (Okla. Civ. App. 2004); *Edwards v. Basel Pharm.*, 933 P.2d 298, 300 (Okla. 1997)). However,

> The sophisticated purchaser exception, also referred to as the bulk supplier defense, absolves suppliers of the duty to warn purchasers who are already aware or should be aware of the potential dangers. *Atkin v. Ashland Chem. Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998) (applying Oklahoma law) (citing *O'Neal v. Celanese Corp.*, 10 F.3d 249, 251–52 (4th Cir. 1993)) . . . . The sophisticated purchaser defense only applies "when the danger related to the particular product is clearly known to the purchaser." 2 Madden & Owen, § 16:4. If the danger is clearly known to the purchaser, "[t]hen there will be no obligation to warn placed upon the supplier. Instead it becomes the employer's responsibility to guard against the known danger[.]" *Id.* In determining the appropriateness of relying upon a purchaser to provide cautionary information to the ultimate users, [t]here is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. . . . The sophisticated purchaser defense was applied by the Tenth Circuit in *Atkin*, 156 F.3d at 1037 . . . . The Tenth Circuit explained . . . . Oklahoma law clearly imposes a "should have known" standard . . . applicable to "knowledgeable purchasers." This is tantamount to the familiar "sophisticated purchaser defense" exception which is based upon the principles set forth in the Restatement (Second) of Torts. This exception absolves suppliers of the duty to warn purchasers who are already aware or should be aware of the potential dangers . . . . "[A] duty to warn ariss only when there is unequal knowledge with respect to the risk of harm."

*Tate v. Statco Eng'g & Fabricators, Inc.*, No. 12-CV-0002-JHP, 2013 WL 6185476, at *6-7 (E.D. Okla. Nov. 25, 2013).

Plaintiff seeks partial summary judgment on his products liability claim against defendants on the grounds that defendants placed a defective product into the stream of commerce. Specifically, plaintiff asserts that defendants failed to provide use instructions or a

warning reasonably calculated to reach the ultimate consumer when they manufactured and/or supplied quick couplers and repair kits without any adequate warnings against interchanging coupler parts manufactured and/or supplied by others.

While each defendant has filed its own response brief, the defendants' positions can generally be categorized into the following: (1) defendants owed no duty to warn against intermingling coupler components because intermingling was not foreseeable and Kemper was a sophisticated/knowledgeable purchaser/user; (2) defendants had no duty to provide warning as to intermingling between HP and other non-HP coupler parts, such as the SpirStar components; (3) the product was not unreasonably dangerous to the ordinary user as plaintiff was a user with expert knowledge about the products and had access to warnings that spoke of the danger; (4) certain defendants in the distribution chain were knowledgeable purchasers who did not need a warning and were in a better position to provide effective warnings to the end user; and (5) the adequacy of the warnings included in the use instructions, Parker's Safety Catalogue, and on the pressure hose are a question of fact. Lorimar additionally contends that plaintiff cannot show that Lorimer provided the couplers or repair kits at issue.

Having carefully reviewed the parties' submissions, the Court finds that plaintiff has not submitted sufficient undisputed evidence warranting partial summary judgment on his failure to warn claim. Among other things, plaintiff has submitted some evidence indicating that defendants manufactured and/or supplied the quick coupler and the repair kits at issue, that the components at issue did not have any serial numbers or brand name on them, and that defendants did not provide warnings that the internal parts of these products may look the same as other similar products and should not be intermingled with internal parts from other couplers manufactured by other companies. In response, defendants, among other things, have submitted

evidence indicating that Kemper is one of the biggest manufacturers of high pressure components for the fracking industry, thereby, potentially qualifying as a knowledgeable purchaser/user that did not need such a warning; plaintiff himself was a knowledgeable user that did not need a warning against intermingling because he was a crew leader on a crew that worked on Parker products in their work recertifying high pressure oil field equipment; defendants did in fact provide a safety guide warning against intermingling; and a warning affixed to the hose plaintiff was using warned users to read and understand the safety guide. Plaintiff replies that it is foreseeable that intermingling would occur; Kemper is not a sophisticated purchaser because it does not manufacture pressure couplers and repair kits – it simply uses them; plaintiff and his employer would not have been able to distinguish the internal components regardless of their sophistication level, and the safety guide mentioned was only provided in bulk shipments and none of the defendants took reasonable efforts to make sure this safety guide was passed on to plaintiff's employer. Based upon the above submitted evidence, the Court finds that plaintiff's motion for partial summary judgment on his failure to warn claim should be denied.

Further, the Court finds that there are disputed issues of material fact on the issue of whether Lorimer provided the actual parts at issue. Defendant Lorimer asserts, in part, that plaintiff cannot show that Lorimer supplied the quick disconnect coupler that plaintiff alleges was defective. Defendant cites to testimony from several depositions, including John Murray's, the Quality Systems Manager for Kemper, testimony that he does not know who supplied the quick disconnect at issue and that Kemper purchases quick disconnect from various suppliers not just Lorimer. In addition, Lorimer asserts that it does not sell SpirStar valve repair kits to Kemper, or anyone else. Lorimer also submits a purchase order form that appears to indicate

6

Kemper purchased some couplers from Industrial Specialties. In contrast, plaintiff asserts that all the other co-defendants indicate that Lorimer provided these products to plaintiff's employer; there is no record showing Kemper obtained coupler repair kits from any other distributor expect Lorimer; and that Lorimer provided in excess of 95% of all couplers and 100% of all the repair kits. Plaintiff states that although the record shows that Kemper purchased 24 couplers from Industrial Specialties, Kemper has returned all of them to Industrial Specialties, and because none of the couplers or internal parts are identified or labeled, there is no direct way to trace a specific coupler or components. Accordingly, under the totality of the facts of this case, the Court finds that it is a question of fact for the jury to determine whether the evidence in this case in fact establishes that Lorimer provided any of the products that caused plaintiff's injuries.

IV. Conclusion

Accordingly, for reasons set forth above, the Court DENIES plaintiff's Motion for Partial Summary Judgment [docket no. 98] and Defendant Lorimer's Motion for Summary Judgment [docket no. 116].

**IT IS SO ORDERED this 24th day of December, 2014.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE